IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | CRIMINAL ACTION FILE |
| ) | |
| CALIXTO MARTINEZ-LEAL and ) | NUMBER 1:11-cr-19-TCB |
| ALFONZO DELGADO-PAZ, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on Defendant Calixto Martinez-Leal's objections [56] and Defendant Alfonzo Delgado-Paz's objections [55] to Magistrate Judge Hagy's Report and Recommendation (the "R&R") [52], which recommends that Delgado's motion to suppress evidence and statements [33] and Martinez's motions to suppress evidence [34] and statements [35] be denied. Also before the Court is Judge Hagy's second Report and Recommendation (the "second R&R") [53], which recommends that Martinez's motion to sever [36] be granted if this Court adopts the R&R. No objections to the second R&R have been filed.

After conducting a careful and complete review of a magistrate judge's findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982), *cert. denied*, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). Those portions of a report and recommendation to which an objection is not asserted are reviewed for plain error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Court has conducted a careful review of the R&R and Defendants' objections thereto. Having done so, the Court finds that Judge Hagy's factual and legal conclusions were correct and that Defendants' objections have no merit. The Court addresses each Defendant's objections in turn.

Delgado objects to the R&R's conclusion that he was not in custody when Drug Enforcement Administration ("DEA") Group Supervisory

Special Agent Keith Cromer talked to him during the traffic stop or during the ride in Agent Cromer's vehicle on the way to the house on Payne Road. Delgado contends that his statements to Agent Cromer were made while he was in custody without the advisement of any *Miranda* warnings because the totality of the circumstances shows that it was reasonable for him to believe he was not free to leave the weigh station and he was questioned in an inherently coercive environment.

As an initial matter, the test for determining whether a defendant is in custody for purposes of the *Miranda* warning is not "free to leave." The "free-to-leave test" applies to determine whether a suspect has been "seized" under the Fourth Amendment, but not to determine whether he is in custody. Rather, a person is in "custody" for *Miranda* purposes only when there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006). Review of the facts shows that Delgado was not in custody.

Most importantly, Delgado volunteered to leave the weigh station with Agent Cromer and show him the house on Payne Road. On the way to the house, Delgado rode in the front seat of Agent Cromer's vehicle, was not

in handcuffs or otherwise physically restrained, was in Popeye's restaurant for approximately fifteen minutes by himself, and volunteered to take Agent Cromer to another warehouse. Delgado was also repeatedly told by Agent Cromer that he was not under arrest and did not have to cooperate. Thus, considering the totality of the circumstances, Judge Hagy correctly concluded that Delgado was not in custody during the time he was with Agent Cromer. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000).

Martinez objects to the R&R's determinations that he freely consented to the movement of his person, the search of his phone, and to speaking to Agent Noe, who is employed by the Clayton County Sheriff's Department and works as a task force agent with the DEA. Martinez contends that the display of force and the sheer number of armed agents present when he was stopped by Agent Noe, coupled with Agent Noe's standing between Martinez and his vehicle, show that any reasonable person would not have believed that he had the option to refuse Agent Noe's requests.

With respect to Martinez's arguments, the R&R determined that (1) the agents had a reasonable suspicion that justified their initial approach of

Martinez at the Shell station to detain him briefly to ask him some questions; and (2) Martinez's detention by the agents was not so prolonged that it ripened from a lawful *Terry* stop into a *de facto* arrest. The Court finds that the display of force, number of armed agents, and Agent Noe's position do not change these conclusions.

Most importantly, Agent Noe and the other agents had a reasonable suspicion that justified their initial approach of Martinez. Surveillance and a wiretap suggested that Martinez was connected to the transportation of methamphetamine ("meth") and to the recent seizure of approximately 960 pounds of meth, with a street value of $40 million.

In addition, the agents' behavior during the stop did not transform the stop into a *de facto* arrest. With respect to their display of force, Martinez was not handcuffed; there is no evidence that the agents attempted to touch him or pat him down for weapons; Agent Noe, with whom Martinez primarily spoke, was not armed; and Agent Noe asked Martinez if he was willing to go voluntarily to the nearby Sears parking lot, as the Shell gas station was becoming crowded. As for the number of armed agents and Agent Noe's position, an investigatory stop does not become an arrest merely because a reasonable person would believe he was

not free to leave. *United States v. Kapperman*, 764 F.2d 786, 791 n.4 (11th Cir. 1985); *see also United States v. Acosta*, 363 F.3d 1141, 1147 (11th Cir. 2004) ("the very nature of a *Terry* stop includes stopping a suspect from leaving").

Finally, Agent Noe's request to move their conversation to the Sears parking lot approximately 125 yards away did not transform the *Terry* stop into an arrest. Foremost, Martinez was not taken to an office or police station, a factor significant in distinguishing *Terry* stops from custodial arrests. *United States v. Hardy*, 855 F.2d 753, 760 (11th Cir. 1988). In addition, while still at the gas station, Agent Noe asked Martinez if he would be willing to move, and another agent then told Martinez that he was not under arrest and did not have to go if he did not want to but that the agents would like for him to go so that they could finish their conversation. Martinez then consented to the move. *See Acosta*, 363 F.3d at 1150 ("exposure to public view . . . diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse"). Furthermore, in response to the agents' statements and questions, Martinez did not ask to leave, nor did he ask the agents to move themselves or their cars out of the way of his vehicle. Rather, Martinez agreed to move to the Sears parking lot and to

ride there with Agent Noe. Thus, Judge Hagy correctly found that Martinez was lawfully stopped and that the stop did not transform into an arrest.

Martinez also challenges the R&R's determination that he was not in custody at the time he was questioned by Agent Noe. As stated above, a person is in "custody" for *Miranda* purposes only when there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. *Street*, 472 F.3d at 1309. The presence of several armed agents and Agent Noe's position, in light of the totality of the circumstances, are not sufficient to show that a reasonable person in Martinez's position would have felt that his freedom of movement had been restrained to the degree associated with formal arrest. As stated in the R&R, Martinez talked with Noe in a gas station and public parking lot, not a police station; he willingly agreed to go to the parking lot after being told he was not under arrest and did not have to go; he never asked the agents to move themselves or their cars out of his way; he was not handcuffed; he did not ask to leave; and he was not ordered to do anything against his will.

Finally, with respect to Martinez's argument that he did not consent to giving his phone to Agent Noe, the phone inspection occurred when Martinez and Agent Noe were in the parking lot. Agent Noe was no longer

standing between Martinez and his vehicle; Martinez was sitting in the front passenger seat of Agent Noe's truck while Agent Noe stood in the driver's doorway. Most importantly, when Agent Noe asked Martinez if he would allow Agent Noe to look in his phone, Martinez handed over his phone without protest or hesitation. Thus, the R&R correctly concluded that Martinez voluntarily gave his phone to Agent Noe for inspection.

Accordingly, the Court ADOPTS AS ITS ORDER the R&R [52] and DENIES Delgado's motion to suppress evidence and statements [33] and Martinez's motions to suppress evidence [34] and statements [35].

In the second R&R, Judge Hagy recommends that Martinez's motion to sever Defendants [36] be granted if this Court adopts the R&R. Defendants have not filed objections to the second R&R. The Court has conducted a careful review of the second R&R and finds that Judge Hagy's factual and legal conclusions were correct. Accordingly, the Court ADOPTS AS ITS ORDER the second R&R [53] and GRANTS Martinez's motion to sever [36].

IT IS SO ORDERED this 2nd day of August, 2011.

_____
Timothy C. Batten, Sr.
United States District Judge